IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| CHRISTOPHER A. TERAS,<br>2942 Legation Street, N.W.<br>Washington, D.C. 20015,<br><br>and<br><br>CHRISTOPHER A. TERAS, P.C.<br>2942 Legation Street, N.W.<br>Washington, D.C. 20015,<br><br>and<br><br>WORLDWIDE PERSONNEL, INC.<br>2942 Legation Street, N.W.<br>Washington, D.C. 20015,<br><br>      Plaintiffs,<br>v.<br><br>JINHEE KIM WILDE<br>11605 LeHavre Drive<br>Potomac, Maryland 20854,<br><br>and<br><br>WILDE & ASSOCIATES, LLC<br>11605 LeHavre Drive<br>Potomac, Maryland 20854,<br><br>    SERVE:   Jinhee Kim Wilde<br>                  Resident Agent<br>                  11605 LeHavre Drive<br>                  Potomac, Maryland 20854,<br><br>      Defendants. | Case No.: _____ |

PALEY, ROTHMAN,
GOLDSTEIN,
ROSENBERG,
EIG & COOPER
CHARTERED

Seventh Floor
4800 Hampden Lane
Bethesda, MD 20814
Phone (301) 656-7603
Fax (301) 654-7354

## COMPLAINT TO ENFORCE LITIGATION SETTLEMENT AGRGEEMENT

Plaintiffs, CHRISTOPHER A. TERAS, CHRISTOPHER A. TERAS, P.C., and WORLDWIDE PERSONNEL, INC. (collectively "Plaintiffs"), by and through undersigned counsel, James R. Hammerschmidt and Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered, bring suit against Defendants, JINHEE KIM WILDE and WILDE & ASSOCIATES, LLC (collectively "Defendants"), and state as follows:

### Parties

1. Christopher A. Teras ("Teras") is an individual citizen of the District of Columbia.

2. Christopher A. Teras, P.C. ("CATPC") is a professional corporation organized under the laws of the District of Columbia. Teras wholly owns CATPC.

3. Worldwide Personnel, Inc. ("Worldwide") is a corporation organized under the laws of the District of Columbia. Teras wholly owns Worldwide

4. Jinhee Kim Wilde ("Wilde") is an individual citizen of the State of Maryland.

5. Wilde & Associates, LLC ("W&A") is a limited liability company organized under the laws of the State of Maryland. Wilde owns W&A, either wholly or together with other members.

### Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

7. This Court has personal jurisdiction over Wilde and W&A pursuant to Md. Code, Cts. & Jud. Proc. Art., §§ 6-102, 6-103(b)(1), and 6-103(b)(4).

8. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1).

### Nature of this Case

9.  In 2009, Teras, Worldwide, CATPC, and Wilde were the parties to litigation in the Superior Court of the District of Columbia relating to the dissolution of Teras & Wilde, PLLC ("T&W"), an immigration law practice, and claims by Worldwide as a client of T&W against Wilde for professional malfeasance. That litigation was settled in 2010 through an agreement that was intended to address and govern all aspects of the parties' past and future relationships. At no point since 2010, however, has Wilde complied with either the letter or spirit of the parties' settlement agreement. This action is intended to rectify Wilde's serial noncompliance with that settlement agreement and enforce the rights bargained for by Teras, Worldwide, and CATPC, and agreed to by Wilde, in 2010.

### Plaintiffs' Association with Wilde

10. Worldwide is a specialized personnel staffing company that works with foreign recruiters, primarily in Asia, to recruit foreign workers to be placed with employers located in the United States in jobs for which there is an insufficient supply of American workers. In 1988, Teras founded the business that later became Worldwide. In 1989, Teras commenced a foreign worker recruitment program with Company X, a multi-state food processing company. Since the incorporation of Worldwide in 1995, that program has been serviced through Worldwide. Worldwide recruited all of the foreign workers and developed all of the recruiters at issue in this action.

11. On or about October 1, 2004, Teras and Wilde formed a new law practice, T&W. When T&W was formed, Worldwide engaged T&W to perform services including, but not limited to, the preparation and filing of the foreign workers' visa applications and immigration-related forms necessary for foreign workers to obtain their immigration visas and to be permitted

to enter the United States to work for the United States-based employers, such as Company X. As such, there was an attorney-client relationship between Worldwide and T&W, including Wilde. In fact, Worldwide paid virtually all the fees to T&W for its services in connection with the foreign workers.

12. At the time of T&W's formation, Wilde had virtually no immigration clients and very limited other business. Wilde did not know or have any relationship with any of the foreign recruiters with whom Worldwide recruits and places the foreign workers at United States-based employers. Wilde did not know or have any relationship with any of the United States-based employers, including Company X, that have agreed to employ foreign workers recruited through Worldwide.

13. At all times prior to Teras entering into a business relationship with Wilde, Worldwide had engaged CATPC to perform the services later performed by T&W. CATPC also advised Worldwide concerning immigration quota issues and US immigration law developments, plus provided legislative and administrative agency advocacy regarding immigration matters. Further, CATPC occasionally advised certain immigrant visa applicants concerning individual legal issues such as criminal record questions as related to US immigration eligibility, and US immigration law issues.

14. Disputes later arose among Teras, Wilde, Worldwide, and CATPC over Teras & Wilde, PLLC's operations and Wilde's actions. These disputes led to the filing of litigation in the Superior Court for the District of Columbia styled as *Wilde v. Teras, et al.*, 2009 CA 002040B, and *Teras & Wilde, PLLC v. Wilde*, 2009 CA 008781B.

15. On or about July 20, 2010, Teras, Wilde, Worldwide, CATPC, and T&W entered into a Settlement Agreement to fully and finally settle the above-described litigation and all related claims and issues among the parties (the "Settlement Agreement").

### Worldwide's Business

16. Worldwide has agreements with foreign recruiters pursuant to which the recruiters locate foreign workers to fill the jobs that Worldwide has identified are available with United States-based employers. Worldwide initially contacts the United States-based employers to determine how many jobs are available for foreign workers and obtains the employers' commitment to employ the foreign workers after the United States government authorizes the foreign workers to immigrate to the United States for the purpose of filling such jobs. Thereafter, Worldwide assists the recruiters and foreign workers in completing forms necessary for the foreign workers to obtain work visas to be able to enter the United States and assume employment pursuant to the prior commitment of the United States-based employer. Worldwide is the conduit between the foreign recruiters and foreign workers, on the one hand, and the United States-based employer, on the other hand. Historically, there has never been any relationship, communication, financial arrangement, or interaction between the foreign recruiters and the United States-based employers.

17. The foreign workers pay the foreign recruiters for all services. For all services rendered to the foreign recruiters and/or on behalf of the foreign workers, the foreign recruiters have agreed in advance to pay Worldwide a fixed-fee with respect to each foreign worker for whom Worldwide obtained a commitment of employment from a United States-based employer. The fixed fee that the foreign recruiters have agreed to pay to Worldwide usually is paid in three or four stages upon the completion of various steps in each foreign worker's immigrant visa

application process. At no point has the foreign recruiter ever made any payment directly to United States-based service-providers that Worldwide engaged in the performance of Worldwide's services on behalf of any foreign recruiter or foreign worker including, for example, attorneys, interpreters, resettlement coordinators, and others.

18. Worldwide has established business relationships with United States-based employers and cooperates with such United States-based employers to determine their need for foreign workers and to obtain their commitment to employ foreign workers recruited through Worldwide. Company X is one such United States-based employer that has determined a need for foreign workers and has committed to employ foreign workers recruited through Worldwide. With respect to the foreign workers covered by the Settlement Agreement (discussed more fully below), there is no financial relationship between Company X and any other party.

19. Since its inception in 1995, Worldwide has devoted substantial time and resources to develop business relationships with the foreign recruiters located in Asia. These business relationships are instrumental to Worldwide's ability to find foreign workers to fill the positions available with the United States-based employers. Pursuant to their agreements, the foreign recruiters and Worldwide historically have worked closely together with the foreign workers to assist the foreign workers in obtaining their necessary visas, entering the United States and settling into their new communities, schools and jobs.

20. Similarly, Worldwide has devoted substantial time and resources to develop business relationships with the United States-based employers, such as Company X, that commit to employ the foreign workers recruited through Worldwide. The identity of the foreign recruiters and the United States-based employers is Worldwide's confidential and proprietary information.

21. Worldwide's relationship with Company X and the foreign recruiters is not an attorney-client relationship, but a business relationship in which Worldwide coordinates the recruitment of the foreign workers and the overall immigration process to satisfy the United States-based employer's labor needs. In addition, Worldwide coordinates the preparation and filing of the foreign workers' visa applications and immigration-related forms. Historically, Worldwide has engaged licensed attorneys to perform such work. While the preparation and filing of immigration forms is neither legal work nor deemed to be "the practice of law," such work frequently is performed by licensed attorneys. Also, non-lawyers, such as Worldwide's recruiters, may and often do perform such services. Where such work is performed by service-providers selected by Worldwide, Worldwide has compensated such service-providers out of the fixed fee Worldwide receives from the foreign recruiters. Notwithstanding, it has always been understood between Worldwide and the foreign recruiters that the foreign recruiters (and/or foreign workers) are free to engage their own service-providers, instead of the service-providers engaged by Worldwide, provided that such independent vendors are engaged at the foreign recruiter's (or foreign worker's) expense. The amount of the fixed fee that the foreign recruiter has agreed to pay to Worldwide is not affected by a foreign recruiter's (or foreign worker's) decision to select its, his, or her own service-providers in place of the service–providers chosen by Worldwide. In more than 25 years, however, no foreign recruiter (or foreign worker) ever has sought to engage independent service-providers in place of those selected by Worldwide.

### The Settlement Agreement and Wilde's Breaches

22. Among many matters and issues, the Settlement Agreement governs the handling and division of all payments due to Worldwide with respect to the foreign workers recruited through Worldwide who had immigrant visa cases filed in 2007 and 2008. These cases were

pending at the time of the Settlement Agreement and the foreign workers were to be employed by Company X.

23. The Settlement Agreement provides that, with one exception, payment of all fees for all foreign workers who are covered by the Settlement Agreement are to be paid directly to Worldwide, or, if received by any other party to the Settlement Agreement, shall be immediately delivered to Worldwide.

24. With respect to work prior to the issuance of a foreign worker's immigrant visa, the Settlement Agreement provides that all such fees are to be Worldwide's exclusive property.

25. With respect to fees due upon the issuance of a foreign worker's immigrant visa, the Settlement Agreement provides that all such fees are to be paid directly to Worldwide, and then disbursed by Worldwide in predetermined and agreed amounts among Worldwide, Teras, and Wilde. Worldwide has the sole and exclusive responsibility under the Settlement Agreement to disburse all payments as provided in the Settlement Agreement. Wilde is not to receive any payment except through Worldwide.

26. To promote the distribution of payments through Worldwide as contemplated by the Settlement Agreement, the Settlement Agreement called for Worldwide to send a letter signed by Teras and Wilde to the relevant recruiters advising them that all payments should be paid directly to Worldwide.

27. Notwithstanding the Settlement Agreement's express terms, Wilde has secretly diverted funds to herself. Except with respect to one foreign worker recruited through Worldwide, Wilde has failed to disclose any such payments, and she has not remitted to Worldwide _any_ payments she has received, despite the Settlement Agreement's express requirements.

28.     Wilde has deposited funds received in connection with at least one foreign worker recruited through Worldwide in an account titled in W&A's name.

29.     In illicitly and clandestinely diverting payments to herself, whether directly or through W&A, Wilde has deprived Worldwide and Teras of the payments that the Settlement Agreement mandates and breached the terms of the Settlement Agreement.

30.     Wilde represented and warranted in the Settlement Agreement that, *inter alia*, she had not agreed to, negotiated, or discussed with, and in the future would not agree to, negotiate or discuss with any foreign recruiter or foreign recruit any arrangement that would or could directly or indirectly result in (A) any payment to Worldwide of amounts less than those set forth in the Settlement Agreement, or (B) any payment being made to Wilde or any agent or affiliate of Wilde that otherwise would be payable or deliverable to Worldwide.  Nevertheless, Wilde has caused Company X to issue correspondence directly to the foreign recruiters, in clear violation of the Settlement Agreement, inducing such foreign recruiters to ignore the letter sent by Teras, Wilde and Worldwide pursuant to the Settlement Agreement and directing that all fees continue to be paid directly to Worldwide.  This letter issued by Company X represents the first time in more than 25 years that Company X has had any direct correspondence with any of the foreign recruiters.

31.     In the Settlement Agreement the parties agreed that, if further legal work was necessary for any foreign recruit, Worldwide would engage an independent "Selected Counsel" to perform such work and that neither Teras nor Wilde, directly or indirectly, would perform such work.  Pursuant to the Settlement Agreement, Worldwide had the obligation to negotiate a reasonable fee to be paid to the Selected Counsel and to pay such fee to the Selected Counsel for performing any additional work.  In consideration of Worldwide's commitment to pay for work

performed by the Selected Counsel, in the Settlement Agreement the parties allocated an additional $1,000 per recruit to Worldwide to offset such expense.

32. The Settlement Agreement provides that in the event that Worldwide is not able to engage a neutral, third-party service-provider to perform certain services with respect to the immigrant visa issuance, including, without limitation, management of all correspondence with the U.S. Department of State ("Selected Counsel"), Teras and Wilde shall cooperate to identify a new Selected Counsel to perform such services.

33. Wilde has at all relevant times refused to cooperate in the appointment of Selected Counsel in accordance with the express terms set forth in the Settlement Agreement and, instead, without any authority whatsoever, has unilaterally undertaken the Selected Counsel's work in complete secrecy from the Plaintiffs and in direct violation of the Settlement Agreement. The Settlement Agreement does not authorize or allocate any payments to a service-provider performing the Selected Counsel duties, unless such service-provider is the Selected Counsel appointed in accordance with the terms of the Settlement Agreement. Nevertheless, Wilde has demanded compensation for such work, and has demanded an excessive rate, far above the amount the parties allocated for the Selected Counsel in the Settlement Agreement.

34. The Settlement Agreement requires that each party cooperate and not interfere with efforts by Worldwide and/or the Selected Counsel engaged by Worldwide to complete the work assigned to the Selected Counsel.

35. Wilde has failed to cooperate with Worldwide with respect the management of work assigned to the Selected Counsel under the terms of the Settlement Agreement. Wilde has received numerous, likely exceeding 400, notices and pieces of correspondence from the United States Department of State, and other United States Government agencies, and has repeatedly

failed to disclose such information to Worldwide and/or Teras. Further, Wilde has taken actions in all such pending matters, which she actively concealed from Worldwide and Teras.

36. Notwithstanding that Wilde never has been appointed or engaged as Selected Counsel, Wilde, in secret, without informing Plaintiffs, has received, prepared, and filed numerous documents relating to the immigrant visa application process for foreign workers recruited through Worldwide and covered by the terms of the Settlement Agreement.

37. The Settlement Agreement provides that each party shall keep the Settlement Agreement confidential and not disclose its terms to any other individual, association, corporation, government agency, or other entity without specific authorization from the other parties.

38. Wilde has contacted Company X and one or more of the foreign recruiters and has advised such parties of the terms of the Settlement Agreement.

39. Wilde has contacted, directed, and induced foreign recruiters to terminate their respective agreements with Worldwide and to work directly with Wilde, thereby endeavoring to circumvent the express terms of the Settlement Agreement with respect to the relationships among Wilde, Plaintiffs, the foreign recruiters, the foreign workers, and Company X.

40. As a result of Wilde's illicit, malicious, and calculated actions, multiple foreign recruiters, with whom Worldwide has worked since long before Teras and Worldwide met Wilde, including, without limitation, David Chang, Greg Evans, and Edith Lai, have advised or indicated to Worldwide that such foreign recruiters no longer will honor their agreements with Worldwide to process and complete the immigrant visa process for foreign-workers recruited through Worldwide for placement at Company X, as is expressly contemplated by the terms of the Settlement Agreement.

41.     At all relevant times since 2010, Wilde has acted as an agent, employee, and principal of W&A for W&A's benefit.

## Count I
## Declaratory Relief

42.     Plaintiffs incorporate the averments set forth in paragraphs 1-41, *supra*, as if fully set forth herein.

43.     The Settlement Agreement requires all parties, including Wilde, to immediately cause all recruit payments to be delivered to Worldwide. In turn, Worldwide is required to disburse funds in accordance with the Settlement Agreement.

44.     Wilde contends that she can disregard the Settlement Agreement and divert fees to herself, all in secret, rather than causing recruit funds to be delivered to Worldwide. Wilde further claims the right to keep funds for herself, and to disburse funds to Teras at her discretion while paying nothing to Worldwide.

45.     Wilde has caused Company X to issue a letter to the recruiters inducing the recruiters to pay funds for recruits covered by the Settlement Agreement directly to Wilde, instead of to Worldwide.

46.     Plaintiffs and Wilde have advanced antagonistic claims regarding the Settlement Agreement's interpretation, creating an actual and existing controversy.

47.     As parties to the Settlement Agreement, Plaintiffs are directly interested in the Settlement Agreement's interpretation and have standing to bring this action for declaratory judgment.

48.     This Court's declaratory judgment as to the interpretation of the Settlement Agreement will terminate the controversy as to whether Wilde must deliver and/or cause all payments to be delivered to Worldwide.

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that the Settlement Agreement requires Wilde to immediately deliver, or cause to be delivered immediately, to Worldwide all recruit fee payments;

B. Declare that Wilde's failure to deliver, or cause to be delivered, to Worldwide all recruit fee payments is a breach of the Settlement Agreement;

C. Declare that Wilde must issue a corrective instruction to the recruiters instructing them to deliver all fees for recruits covered by the Settlement Agreement directly to Worldwide; and

D. Grant such further relief as the Court deems just and proper.

### Count II
### Breach of Contract

49. Plaintiffs incorporate the averments set forth in paragraphs 1-41, *supra*, as if fully set forth herein.

50. The Settlement Agreement is a binding and enforceable contract between Plaintiffs and Wilde.

51. Wilde has repeatedly intentionally breached the Settlement Agreement in numerous respects, including, but not limited to, failing to deliver fees to Worldwide, obstructing the delivery of fees to Worldwide, retaining funds payable to Worldwide, failing to cooperate in selecting and engaging Selected Counsel to handle relevant recruit legal work, failing to cooperate with Worldwide in the processing of recruit immigrant visa applications, and disclosing the terms of the Settlement Agreement to other persons without Plaintiffs' consent.

52. Wilde has definitely and unequivocally expressed her intention to continue to breach the Settlement Agreement and has thereby anticipatorily repudiated the Settlement Agreement.

53.  Wilde's Settlement Agreement breaches have caused Plaintiffs damages in the form of lost revenue from, *inter alia*, fees paid by prospective immigrant workers.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.  Order Wilde to perform an accounting of all recruit fees Wilde has collected, received, or diverted anywhere other than to Worldwide;

B.  Enter judgment in favor of Plaintiffs and against Wilde in the amount of Three Million Dollars ($3,000,000.00) for damages suffered as a result of Wilde's Settlement Agreement breaches;

C.  Enter a preliminary and permanent injunction against Wilde restraining her from continuing to breach the Settlement Agreement;

D.  Enter judgment in favor of Plaintiffs and against Wilde in the amount of Plaintiffs' reasonable attorney fees incurred in bringing this action;

E.  Enter judgment in favor of Plaintiffs and against Wilde for the costs of this action; and

F.  Grant such further relief as the Court may deem just and proper.

### Count III
### Interference with Contractual Relationships

54.  Plaintiffs incorporate the averments set forth in paragraphs 1-41, *supra*, as if fully set forth herein.

55.  Worldwide had contractual relationships with the foreign recruiters who located potential immigrant workers for whom Worldwide arranged immigrant visa sponsorship and oversaw the overall immigration and re-settlement process.

56.  Wilde at all relevant times had knowledge of Worldwide's contractual relationships with the recruiters.

57. Wilde intentionally and without justification induced numerous recruiters, including, but not limited to, Edith Lai, David Chang, and Greg Evans, to terminate those parties' contractual relationships with Worldwide.

58. Wilde's conduct was wrongful on several legal grounds, including but not limited to the fact that her conduct constituted an egregious breach of numerous terms, representations, and warranties contained in the Settlement Agreement.

59. Numerous recruiters, including, but not limited to, Edith Lai, David Chang, and Greg Evans, did in fact terminate contractual relationships with Worldwide.

60. Worldwide has sustained damages as a result of Wilde's interference with Worldwide's contractual relationships.

61. Wilde acted with the actual intention to cause harm and injury to Plaintiffs by interfering with and destroying Worldwide's contractual relationships.

62. In interfering with Plaintiffs' contractual relationships, Wilde acted as an agent, employee, and principal of W&A for W&A's benefit.

WHEREFORE, Worldwide respectfully requests that the Court:

A. Enter judgment in favor of Worldwide and against Defendants in the amount of Three Million Dollars ($3,000,000.00) for damages suffered as a result of Wilde's interferences with Worldwide's contractual relationships;

B. Enter judgment in favor of Worldwide and against Defendants in the amount of Three Million Dollars ($3,000,000.00) for punitive damages for Wilde's interferences with Worldwide's contractual relationships;

C. Enter a preliminary and permanent injunction against Defendants restraining them from continuing to interfere with Worldwide's contractual relationships;

D. Enter judgment in favor of Plaintiffs and against Defendants in the amount of Plaintiffs' reasonable attorney fees incurred in bringing this action;

E. Enter judgment in favor of Worldwide and against Defendants for the costs of this action; and

F. Grant such further relief as the Court may deem just and proper.

## Count IV
### Interference with Economic Relationships

63. Plaintiffs incorporate the averments set forth in paragraphs 1-41, *supra*, as if fully set forth herein.

64. Insofar as Plaintiffs may plead inconsistently or alternatively herein, Fed. R. Civ. Proc. 8(d) permits such pleading.

65. Worldwide formerly had lawful and legitimate business relationships with Company X as well as with numerous foreign recruiters who located potential immigrant workers for whom Worldwide arranged immigrant visas and oversaw the overall immigration and re-settlement process.

66. Wilde intentionally and willfully engaged in actions calculated to interfere with and induce the termination of Worldwide's lawful economic relationships with Company X and numerous recruiters, including, but not limited to, Edith Lai, David Chang, and Greg Evans.

67. Wilde's actions were without justifiable cause or right because those actions constitute breaches of the Settlement Agreement between the parties.

68. Wilde's actions in interfering with Worldwide's lawful economic relationships with Company X and numerous recruiters, including, but not limited to, Edith Lai, David Chang, and Greg Evans, have caused damages to Worldwide.

69. Wilde acted with the actual intention to cause harm and injury to Plaintiffs by interfering with and destroying Worldwide's economic relationships.

70. In interfering with Plaintiffs' economic relationships, Wilde acted as an agent, employee, and principal of W&A for W&A's benefit.

WHEREFORE, Worldwide respectfully requests that the Court:

A. Enter judgment in favor of Worldwide and against Defendants in the amount of Three Million Dollars ($3,000,000.00) for damages suffered as a result of Wilde's interferences with Worldwide's economic relationships;

B. Enter judgment in favor of Worldwide and against Defendants in the amount of Three Million Dollars ($3,000,000.00) for punitive damages for Wilde's interferences with Worldwide's economic relationships;

C. Enter a preliminary and permanent injunction against Defendants restraining them from continuing to interfere with Worldwide's economic relationships;

D. Enter judgment in favor of Plaintiffs and against Defendants in the amount of Plaintiffs' reasonable attorney fees incurred in bringing this action;

E. Enter judgment in favor of Plaintiffs and against Defendants for the costs of this action; and

F.  Grant such further relief as the Court may deem just and proper.

PALEY, ROTHMAN, GOLDSTEIN
ROSENBERG, EIG & COOPER, CHTD.

By: _____  w/permission & authorization by Ethan L. Don
    James R. Hammerschmidt

4800 Hampden Lane
Seventh Floor
Bethesda, Maryland 20814
Telephone:   (301) 951-9338
Facsimile:   (301) 968-3415
jhammerschmidt@paleyrothman.com

*Attorney for Plaintiffs Christopher A. Teras, Worldwide Personnel, Inc., and Christopher A. Teras, P.C.*
