IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER A. TERAS, et al.                    :

                                                :

        v.                                      :   Civil Action No. DKC 14-0244

                                                :

JINHEE KIM WILDE, et al.                        :

                                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract action are a motion to dismiss (ECF No. 6) and motion to seal (ECF No. 8), filed by Defendants Jinhee Wilde ("Wilde") and Wilde & Associates, LLC ("W&A"). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion to dismiss and motion to seal will be denied.

**I.   Background**

**A.   Factual Background**

Plaintiff Worldwide Personnel, Inc. ("Worldwide") is a corporation organized under the laws of the District of Columbia and wholly owned by Plaintiff Christopher A. Teras ("Teras"). (ECF No. 1 ¶¶ 3, 10). Worldwide is a specialized personnel staffing company that works with foreign recruiters, primarily in Asia, to recruit foreign workers to be placed with employers located in the United States in jobs for which there is an

insufficient supply of American workers. (*Id.* ¶ 10). In 1989, Teras commenced a foreign worker recruitment program with Company X,[1] a multi-state food processing company. Since Worldwide was incorporated in 1995, Company X's foreign worker recruitment program has been serviced through Worldwide. (*Id.*). Worldwide provides various services to Company X and the foreign recruiters and engages various United States-based service-providers on the recruiters' and recruits' behalf including attorneys, interpreters, and resettlement coordinators. (*Id.* ¶ 17). In addition, Worldwide coordinates the preparation and filing of the foreign workers' visa applications and immigration-related forms. (*Id.* ¶ 21). Worldwide sometimes engages lawyers to perform this work, and other times the work is performed by non-lawyers. (*Id.*). When such work is performed by service-providers selected by Worldwide, Worldwide compensates such service-providers out of the fixed-fee it receives from the foreign recruiters. (*Id.*). The foreign recruiters and recruits are also free to engage their own service-providers, but independent service-providers must be

---

[1] The parties both refer to the food processing company throughout their briefs as Company X to maintain the company's anonymity. The parties acknowledge that Company X is the recruit employer referenced in the Settlement Agreement. As discussed below, it is not apparent why this company's name must remain confidential.

engaged at the foreign recruiter's or recruit's own expense. (*Id.*).

On October 1, 2004, Plaintiff Teras and Defendant Jinhee Kim Wilde ("Wilde") formed an immigration law practice named Teras & Wilde, PLLC ("T&W"). (*Id.* ¶ 11). At the time of T&W's formation, Wilde had virtually no immigration clients and did not know or have any relationship with the foreign recruiters who worked with Worldwide or Company X. (*Id.* ¶ 12). After T&W was formed, Worldwide engaged T&W to perform services, including preparation and filing of the foreign workers' visa applications and immigration-related forms that were necessary for foreign workers to obtain their immigration visas and to be permitted to immigrate to the United States and work for companies such as Company X. (*Id.* ¶ 11). Prior to Worldwide engaging T&W's services, Worldwide had engaged Plaintiff Christopher A. Teras, P.C. ("CATPC"), a professional corporation wholly owned by Teras, to perform the services that were later performed by T&W. (*Id.* ¶ 13).

In 2009, disputes arose among Teras, Wilde, Worldwide, CATPC, and T&W, which led to litigation being filed in the Superior Court of the District of Columbia. The litigation involved the dissolution of T&W and professional malpractice claims against Wilde. (*Id.* ¶¶ 9, 14). On July 20, 2010, Teras, Wilde, Worldwide, CATPC, and T&W entered a Settlement Agreement

(the "Agreement" or "Settlement Agreement") to settle all issues and claims among the parties. (*Id.* ¶ 15). The Settlement Agreement was intended to address all issues in the litigation and govern the parties' past and future relationships. (*Id.* ¶ 9). The Agreement governs the handling and division of payments that were due to Worldwide for foreign workers that were recruited by Worldwide and had immigrant cases filed in 2007 and 2008. (*Id.* ¶ 22). The Settlement Agreement requires that all payments that were due to Worldwide for these specific recruits must be paid directly to Worldwide, and then disbursed in predetermined and agreed amounts among Worldwide, Teras, and Wilde. (*Id.* ¶¶ 23-25). The Agreement called for Worldwide to send a letter signed by Teras and Wilde to the relevant recruiters, informing them that all payments should be directed to Worldwide. (*Id.* ¶ 26). The parties also agreed that if further legal work was necessary for any of the recruits covered by the Agreement, Worldwide would use specific procedures to engage independent "Selected Counsel" to perform such work, and that neither Teras or Wilde could perform the work. (*Id.* ¶¶ 31-32). Worldwide agreed to negotiate and pay a reasonable fee to Selected Counsel, and in consideration for Worldwide's commitment to pay such fees, the parties allocated $1,000 per recruit to Worldwide to offset such an expense. (*Id.* ¶ 31).

4

According to Plaintiffs, since the inception of the Settlement Agreement, Wilde has committed numerous breaches of the Agreement, including: secretly diverting payments that were due to Worldwide under the Settlement Agreement to herself or W&A and concealing these payments from Worldwide (*Id.* ¶ 27); inducing the recruiters and recruits to ignore the letter sent by Worldwide and send their fees directly to Defendants (*Id.* ¶ 30); failing to cooperate with Worldwide to appoint Selected Counsel and instead undertaking Selected Counsel's work in secrecy (*Id.* ¶¶ 32-33); failing to disclose to Worldwide correspondence that Wilde received from the United States Department of State and other government agencies and instead secretly taking action in these matters (*Id.* ¶¶ 35-36); disclosing the terms of the Settlement Agreement to Company X and foreign recruiters (*Id.* ¶¶ 37-38); and inducing the foreign recruiters not to honor their fixed-fee agreements with Worldwide and instead work directly with Wilde (*Id.* ¶¶ 39-40).

### B.  Procedural Background

On January 27, 2014, Teras, CATPC, and Worldwide (collectively "Plaintiffs") filed a four count complaint against Wilde and W&A (collectively "Defendants" or "Wilde"). Plaintiffs allege that since the Agreement's inception Defendants have failed to comply with it. Plaintiffs have filed several claims which spring from Defendants' alleged violation

of the parties' Settlement Agreement, including: breach of contract (count II); interference with contractual relationships (count III); and interference with economic relationships (count IV). Plaintiffs also request a declaratory judgment (count I), and various forms of relief flowing from their other claims, including: damages; an accounting; attorneys' fees; costs; and an injunction against Wilde preventing her from continuing to breach the Settlement Agreement. On March 5, 2014, Defendants filed a motion to dismiss (ECF No. 6), and a motion to seal (ECF No. 8). The motion to dismiss is fully briefed. (ECF Nos. 11 and 12).

## II. Motion to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."

6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.   Affirmative Defense**

Defendants first argue that Plaintiffs' claims are barred because they violate several ethical rules. Defendants argue that Plaintiffs have not stated a claim for breach of contract based on their failure to deliver fees to Worldwide because the legal fees received by Wilde were for legal services she performed, and it would violate Rule 5.4 of the Rules of Professional Conduct to split these fees with Worldwide, a non-lawyer. Defendants also contend that Plaintiffs' claims

infringe on the recruiters' and recruits' rights to choose Wilde as their counsel and Wilde's right to perform work for these clients and receive compensation for that work.   Defendants assert that the Maryland and District of Columbia Rule of Professional Conduct 5.6 prohibits such agreements that restrict attorneys' rights to practice law.   Defendants contend that under "the ethical rules and the parties' agreement, Wilde is free to compete for the business of the recruits, recruiters, and employer[,]" and accordingly, Plaintiffs' claims should be dismissed because they are barred by the Attorney Rules of Professional Conduct.   (ECF No. 6-1, at 5-6).

Plaintiffs respond that neither their claims nor the Settlement Agreement violate any ethical rules.   First, Plaintiffs contend that Wilde is not necessarily forbidden by Rule 5.4 from sharing the fees she received from the recruiters or recruits because the nature of the monies paid to Wilde is uncertain at this stage in the proceedings and the fees were not necessarily paid for legal services considering that Worldwide's agreements with recruiters covered a range of services, many of which were non-legal.   (ECF No. 11-1, at 15).   Second, Plaintiffs note that § 4(c) of the Settlement Agreement specifically recognizes recruits' right to retain counsel of their choice:  "each [recruit] shall have the unimpeded right to retain an independent attorney of his/her choosing and at

his/her own cost." (ECF No. 11-1, at 7). According to Plaintiffs, the Agreement merely requires that the recruit pay for an independent attorney's services if the recruit chooses not to use the Selected Counsel retained by Worldwide; it does not ban the recruit from using independent counsel. Third, Plaintiffs argue that Wilde does not have an unfettered right to represent any client that comes to her seeking advice. In fact, Plaintiffs assert that Rules of Professional Conduct 1.6, 1.8, and 1.9 may disqualify Wilde from representing the foreign recruits and recruiters due to her duty of confidentiality and to avoid conflicts of interests with her former client, Worldwide.

At the motion to dismiss stage, it is not appropriate to consider Defendants' affirmative defense based on the Attorney Rules of Professional Conduct. An affirmative defense is not ordinarily considered on a motion to dismiss because a plaintiff is not required to negate it in the complaint. The purpose of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to "test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d. 244, 250 (4th Cir. 1993). "A court may consider defenses on a 12(b)(6) motion only 'when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.'" *E. Shore Markets, Inc. v.*

*J.D. Assoc. Ltd. P'ship,* 213 F.3d 175, 185 (4th Cir. 2000); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 348 (2d ed. 1990).  It certainly is not "clear" from the face of the complaint that the Settlement Agreement or Plaintiffs' requested relief under the Settlement Agreement would violate Rule 5.4 by requiring Defendants to share legal fees with non-lawyers, nor that it would violate Rule 5.6 by improperly restricting Wilde's right to practice law.[2]   Moreover, Defendants' arguments regarding fee sharing rely on facts — that the legal fees Wilde received were for *bona fide* legal services — contrary to those asserted by Plaintiffs.  Plaintiffs' summation of Defendants' defense is entirely on point:

> Defendants appear to be contending that any monies they have received are not Worldwide's fixed fees, but *bona fide* payments for legal services Defendants rendered to the recruits.  That defense [] runs counter to the Complaint's allegations that Wilde has diverted the fixed fees due and owing to Worldwide [under the Settlement Agreement].  Thus, there is a dispute about how much money Defendants have received and what it was in payment for.

---

[2] As noted by Plaintiffs, Wilde does not have an unfettered right to practice law, as the Rules of Professional Conduct provide limitations on representing clients with interests adverse to former clients.  Moreover, Defendants have not challenged the enforceability of the Settlement Agreement itself, which provides some limits on how Selected Counsel will be chosen when legal service needs arise for the recruits covered by the Settlement Agreement.

(ECF No. 11-1, at 13-14).   At the motion to dismiss stage, Plaintiffs' allegations must be taken as true, and therefore, Defendants' argument that Plaintiffs' claims are barred by the Rules of Professional Conduct will be rejected.

### C.   Breach of Contract (Count II)

Defendants contend that despite Plaintiffs' allegations that Defendants violated several provisions of the Settlement Agreement, none of these violations states a plausible claim for breach of contract because Plaintiffs fail to allege that they were *harmed* by these breaches.   Defendants point specifically to several of their alleged breaches — failure to cooperate in selecting and engaging Selected Counsel; failure to cooperate with Worldwide in processing recruits' visa applications; and disclosure of terms of the Settlement Agreement — arguing that Plaintiffs have not alleged that these violations damaged them.

In response, Plaintiffs point to various allegations in the complaint to clarify how they were damaged by Defendants' various breaches.   First, Plaintiffs allege that they were damaged by Wilde's failure to deliver revenues that were due and owing to Worldwide.   (ECF No. 11-1, at 15).   Plaintiffs also argue they were damaged by Defendants' alleged failure to cooperate with Worldwide in processing foreign recruits' visa applications.   They assert that Worldwide only receives payments from foreign recruiters when certain steps in the recruits'

immigration processes are completed and Defendants' failure to pass along communications from the State Department prevented the recruits from receiving their visas, which in turn prevented Worldwide from receiving payments. Plaintiffs also contend that Defendants' disclosure of the terms of the Settlement Agreement, which violated the Agreement's confidentiality provision, caused multiple foreign recruiters to repudiate their agreements with Worldwide, again damaging Worldwide.

As recently noted by Judge Quarles in *Arashteh v. Mount Vernon Fire Ins. Co.,* No. WDQ-13-2833, 2014 WL 3974172, at *4 (D.Md. Aug. 12, 2014), "[t]o survive a motion to dismiss, a complaint for breach of contract must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of the obligation." *Id.* (internal citation and quotation marks omitted). Moreover, "[a]t the motion to dismiss stage, the [p]laintiffs do not have to forecast evidentiary support for [their] allegations." *Id.* (third alteration in original) (internal citation and quotation marks omitted).

Plaintiffs' allegations state a plausible claim for breach of the Settlement Agreement. Plaintiffs have alleged that the Settlement Agreement created a number of obligations for Wilde, and that Wilde breached several of these obligations, including: "retaining funds payable to Worldwide, failing to cooperate in selecting and engaging Selected Counsel to handle relevant

recruit legal work, failing to cooperate with Worldwide in processing recruit immigrant visa applications, and disclosing the terms of the Settlement Agreement to other persons without Plaintiffs' consent." (ECF No. 1 ¶ 51). Defendants' argument that Plaintiffs have failed sufficiently to allege that they were damaged by these breaches will be rejected. Contrary to Defendants' assertion, Plaintiffs' complaint specifically alleges that Defendants' breaches caused them damages — "in the form of lost revenues from, *inter alia*, fees paid by prospective immigrant workers." (ECF No. 1 ¶ 53). Moreover, "Maryland law is clear that a breach of contract, in the absence of actual damages, will entitle the plaintiff to nominal damages." *Yacoubou v. Wells Fargo Bank, N.A.,* 901 F.Supp.2d 623, 638 (D.Md. 2012) (*citing Taylor v. NationsBank, N.A.,* 365 Md. 166, 175 (2001)), *aff'd sub nom. Adams v. Wells Fargo Bank,* 521 F.App'x 177 (4th Cir. 2013). Accordingly, even if Plaintiffs failed to allege damages, they would still state a claim for breach of contract because the court could infer at least nominal damages based on Plaintiffs' allegations that the Settlement Agreement was breached.

### D.   Tortious Interference (Counts II and III)

Plaintiffs assert that Defendants have tortiously interfered with their contractual relationships with the foreign

13

recruiters as well as with their business relationships with numerous foreign recruiters and Company X.

Defendants move to dismiss these claims asserting that Maryland has "refused to adopt any theory of tortious interference with contract or with economic relations that converts a breach of contract into an intentional tort." (ECF No. 6-1, at 11) (*quoting Alexander & Alexander, Inc. v. Dixon Evander & Associates, Inc.*, 336 Md. 635 (1994)). Defendants contend that because Plaintiffs have not alleged that Wilde performed any wrongful acts aside from breaching the Settlement Agreement, they have failed to state a claim for tortious interference with either contractual or economic relations.

According to Plaintiffs, Defendants' wrongful acts were that "Wilde directly induced the foreign recruiters to terminate their agreements with Worldwide and work with her directly and caused Company X to contact the foreign recruiters and ignore the mode of payment set forth in the Agreement." (ECF No. 11-1, at 21). Plaintiffs also contend that Defendants' interference with Worldwide's contractual relationships with the recruiters and recruits, and economic relations with Company X was wrongful because it "constituted a breach of a *separate and independent* contract" — the Settlement Agreement, and her conduct breached her "ethical and common law fiduciary obligations" to her former

client, Worldwide.    (ECF No. 11-1, at 22) (emphasis in original).

As the United States Court of Appeals for the Fourth Circuit recently recognized in *Painter's Mill Grill, LLC v. Brown,* 716 F.3d 342, 353-54 (4th Cir. 2013):

> "Maryland recognizes the tort action for wrongful interference with contractual or business relationships in two general forms: inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.,* 336 Md. 635, 650 A.2d 260, 268 (1994) (internal quotation marks omitted).  To establish a claim for wrongful interference with a contract, a plaintiff must demonstrate "(1) [t]he existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom." *Blondell v. Littlepage,* 185 Md.App. 123, 968 A.2d 678, 696 (2009) (internal quotation marks omitted), *aff'd,* 413 Md. 96, 991 A.2d 80 (2010).  And to establish a claim for intentional interference with economic relationships, a plaintiff must demonstrate "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Alexander & Alexander,*

650 A.2d at 269 (internal quotation marks omitted).

## 1.   Tortious Interference with Contract

Plaintiffs' allegations that Wilde has contacted foreign recruiters and induced them to terminate their agreements with Worldwide and work directly with her, state a plausible claim for tortious interference with an existing contract.   The Complaint alleges that "Worldwide had contractual relationships with the foreign recruiters who located potential immigrant workers for whom Worldwide arranged immigrant visa sponsorship and oversaw the overall immigration and re-settlement process[.]" (ECF No. 1 ¶ 55).   As part of the agreements:

> the foreign recruiters have agreed in advance to pay Worldwide a fixed-fee with respect to each foreign worker for whom Worldwide obtained a commitment from a United States-based employer.   The [fixed-fee] that the foreign recruiters have agreed to pay to Worldwide usually is paid in three or four stages upon the completion of various steps in each foreign worker's immigration visa application process.

(ECF No. 1 ¶ 17).   Plaintiffs also allege that "Wilde at all relevant times had knowledge of Worldwide's contractual relationships with the recruiters" (ECF No. 1 ¶ 56); "Wilde intentionally and without justification induced numerous recruiters [] to terminate those parties' contractual relationships with Worldwide" (*Id.* ¶ 57); "[n]umerous recruiters, including but not limited to, Edith Lai, David

16

Change, and Greg Evans, did in fact terminate contractual relationships with Worldwide" (*Id.* ¶ 59); and "Worldwide has sustained damages as a result of Wilde's interference with Worldwide's contractual relationships" (*Id.* ¶ 60). Plaintiffs plausibly allege that Wilde intentionally induced the foreign recruiters to breach their agreements with Worldwide, causing Worldwide damages in the form of lost revenue from the contingent fixed-fee payments Worldwide was supposed to receive upon completion of various stages in the recruiters' immigrant visa processes.

### 2. Tortious Interference with an Economic Relationship

Defendants challenge whether Plaintiffs' allegations concerning Wilde's conduct plausibly constitute malice or a wrongful act in order to satisfy the third element of tortious interference with economic relations. Defendants cite *Alexander & Alexander,* 336 Md. 635 (1994), arguing that Wilde's breach of the Settlement Agreement alone is insufficient to allege wrongful conduct, and that her interference must be wrongful, independent of any contract. In *Alexander & Alexander,* 336 Md. 635 (1994), the Court of Appeals of Maryland clarified what conduct may constitute wrongful or malicious conduct:

> [W]e have made clear in our cases that acting to pursue one's own business interests at the expense of others is not, in itself, tortious.

> Moreover, this Court has refused to adopt any theory of tortious interference with contract or with economic relations that converts a breach of contract into an intentional tort.
>
> . . . .
>
> [T]ortious intent alone, defined as an intent to harm the plaintiff or to benefit the defendant at the expense of the plaintiff, [is] not sufficient to turn deliberate interference into a tort, [] the defendant *must interfere through improper or wrongful means*.
>
> Therefore, wrongful or malicious interference with economic relations is *interference by conduct that is independently wrongful or unlawful*, quite apart from its effect on the plaintiff's business relationships. Wrongful or unlawful acts include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.
>
> In addition, "actual malice," in the sense of *ill will, hatred or spite,* may be sufficient to make an act of interference wrongful where the defendant's malice is the primary factor that motivates the interference.

*Alexander & Alexander,* 336 Md. at 653-57 (emphases added) (internal citations and quotation marks omitted).

Plaintiffs not only allege that Wilde's conduct was wrongful because it breached the Settlement Agreement, but also that Wilde's acts were wrongful because they constituted a breach of Wilde's ethical and fiduciary duties to her former

18

client, Worldwide.   In addition, Plaintiffs allege that Wilde
failed to disclose information she received from the State
Department, and "actively concealed" actions she took in such
matters and payments she received therefrom, rather than sending
the fees to Worldwide as required by the Settlement Agreement.
(ECF No. 1 ¶¶ 33, 35-36).   Plaintiffs sufficiently allege that
Wilde acted wrongfully, by actively concealing information and
funds from Plaintiffs and potentially breaching her fiduciary
duties to Worldwide.

### E.   Declaratory Judgment (Count I)

Plaintiffs seek a declaratory judgment from the court that:

> [T]he Settlement Agreement requires Wilde to
> immediately deliver, or cause to be
> delivered immediately, to Worldwide all
> recruit fee payments; [and] . . . Wilde's
> failure to deliver, or cause to be
> delivered, to Worldwide all recruit fee
> payments is a breach of the Settlement
> Agreement; [and] . . . Wilde must issue a
> corrective instruction to the recruiters
> instructing them to deliver all fees for
> recruits covered by the Settlement Agreement
> directly to Worldwide[.]

(ECF No. 1, at 13).

The Declaratory Judgment Act provides that "[i]n a case of
actual controversy within its jurisdiction . . . any court of
the United States . . . *may* declare the rights and other
relations of any interested party seeking such declaration,
whether or not further relief is sought."   28 U.S.C. § 2201(a).

19

(emphasis added).  The Fourth Circuit has further explained that a federal court may properly exercise jurisdiction in such cases where three criteria are met:  "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for the jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.,* 386 F.3d 581, 592 (4th Cir. 2004) (*citing* 28 U.S.C. § 2201; *Cont'l Cas. Co. v. Fuscardo,* 35 F.3d 963, 965 (4th Cir. 1994)).

Defendants do not challenge the second and third criteria; rather, they argue that Plaintiffs' allegations do not support a present controversy that warrants a declaratory judgment. Defendants assert that Plaintiffs' alleged controversy is based on two allegations:  (1) Wilde improperly retaining fees paid to her; and (2) Wilde communicating with Company X and the recruiters.  Defendants argue that there is no actual controversy because Wilde's actions in retaining fees did not violate the Settlement Agreement because the fees were intended for Wilde rather than Worldwide.  Additionally, Defendants argue that they cannot be required to share fees with Worldwide because it would violate the ethical rule of sharing fees with a

non-lawyer.      Defendants   also   contend   that   Plaintiffs'
allegations regarding Wilde's allegedly improper communications
with  Company  X  and  the  recruiters  do  not  involve  a  present
controversy because these claims were settled and released as
part of the Settlement Agreement.

In  response,  Plaintiffs  contend  that  there  is  a  present
controversy  regarding  whether  Defendants'  conduct  violated  and
continues  to  violate  the  Settlement  Agreement,  a  controversy  of
sufficient   immediacy   to   warrant   a   declaratory   judgment.
Plaintiffs point out again that Defendants' arguments are based
on  a  factual  assertion  —  that  the  only  funds  that  Wilde  has
received are *bona fide* legal fees — that is directly contrary to
the  Complaint's  controlling  allegations,  that  Wilde  retained
fees that were part of the fixed-fee due and owing to Worldwide
for   a   wide-range   of   services   provided   to   the   recruits.
Plaintiffs also dispute Wilde's assertions that she is "entitled
to  represent  the  foreign  workers  and  recruiters,"  arguing  that
her  ethical  obligations  to  her  former  client,  Worldwide,  make
such a representation improper.

Plaintiffs   have   alleged   a   concrete   controversy   with
Defendants  regarding  whether  the  fees  that  were  paid  to
Defendants properly belonged to Defendants or belonged, in part
or  full,  to  Plaintiffs  based  on  the  terms  of  the  Settlement
Agreement.   The parties also dispute whether, based on the terms

of the Settlement Agreement, Wilde is permitted to continue representing recruits that she formerly represented on behalf of Worldwide.   This controversy also appears to be of a sufficient immediacy to warrant a declaratory judgment.   If Plaintiffs' allegations are true, they have been damaged and will continue to be damaged by Defendants retaining payments which are properly due to Plaintiffs.   Moreover, contrary to Defendants' assertions, Plaintiffs claims relating to Defendants' allegedly improper communications with the recruiters and Company X could not have been settled and released as part of the Settlement Agreement, because Plaintiffs' allegations relate to conduct occurring after the Settlement Agreement was executed.

### F.   Dismissal of CATPC

Defendants argue that CATPC should be dismissed as a Plaintiff because the complaint contains no allegations that support a claim by CATPC.   (ECF No. 6-1, at 5).   Defendants assert that the only allegations pertaining to CATPC are that "it performed legal work for recruits before [T&W] did [], and that it is a party to the Settlement Agreement[.]"   (*Id.*).   Plaintiffs do not respond to these arguments.

Because all of Plaintiffs' claims are rooted in the Settlement Agreement and none will be dismissed, it is premature at this juncture to dismiss Plaintiff CATPC, who is also a party to the Settlement Agreement.   CATPC's rights and obligations

22

under the Settlement Agreement do not appear to differ from those of Worldwide and Teras, such that CATPC's allegations would fail to state a plausible claim against Defendants while the other Plaintiffs' allegations remain plausible.[3]

## III. Motion to Seal

Along with their motion to dismiss, Defendants also filed an unopposed motion to seal exhibit 2 of their motion to dismiss (ECF No. 8). Defendants seek to seal the parties' Settlement Agreement (ECF No. 7), arguing that it contains a confidentiality provision and includes:

> information that is personal and confidential to the parties regarding the former business affairs of the parties. It also contains sensitive commercial information about how the parties conduct their law practices, including among other things, pricing information and client lists. Disclosure of this information could work a competitive disadvantage to all the parties in their business.

(ECF No. 8, at 1).

---

[3] Defendants have also moved to dismiss Plaintiffs' request for attorney fees, arguing that Plaintiffs have not alleged a sufficient basis for an award. (ECF No. 6-1, at 11). Plaintiffs argue that they are due attorneys' fees based on an indemnification provision in the Settlement Agreement which requires Wilde to hold Plaintiffs harmless against certain of Wilde's breaches of representations and warranties in the Agreement. (ECF No. 11-1, at 24). Plaintiffs argue that Wilde breached her representation and warranty that she would not enter any arrangement that would reduce Worldwide's payments or cause payments owed to Worldwide to be made to her. Plaintiffs have stated a plausible basis for an award of attorneys' fees.

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). "The common law presumes a right of the public to inspect and copy 'all judicial records and documents,'" *id.* at 575 (*quoting Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)), although this presumption "'can be rebutted if countervailing interests heavily outweigh the public interests in access.'" *Id.* (*quoting Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978). Under this common law balancing analysis, "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253. "Ultimately, under the common law[,] the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court.'" *Va. Dep't of State Police*, 386 F.3d at 575 (*quoting Nixon*, 435 U.S. at 598–99) (second alteration in original).

In addition to the public's common law right of access, the First Amendment provides a "more rigorous" right of access for certain "judicial records and documents." *Va. Dep't of State*

24

*Police*, 386 F.3d at 575-76; *see also In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (explaining the "significant" distinction between the two rights of access). Where the First Amendment does apply, access may be denied "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180.

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record'" in the first instance. *In re Application*, 707 F.3d at 290. The Fourth Circuit recently held that judicially authored or created documents are "judicial records," as are documents filed with the court that "play a role in the adjudicative process, or adjudicate substantive rights." *Id.* (*citing Rushford*, 846 F.2d at 252; *In re Policy Mgt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995) (unpublished table decision)).

Thus, as a substantive matter, when a district court is presented with a request to seal certain documents, it must determine two things:  (1) whether the documents in question are judicial records to which the common law presumption of access applies; and (2) whether the documents are also protected by the more rigorous First Amendment right of access. *In re*

*Application*, 707 F.3d at 290; *see also Va. Dep't of State Police*, 386 F.3d at 576.

The sealing of any judicial record must also comport with certain procedural requirements. First, the non-moving party must be provided with notice of the request to seal and an opportunity to object. *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). This requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue." *Id.* at 234. In addition, "less drastic alternatives to sealing" must be considered. *Va. Dep't of State Police*, 386 F.3d at 576; *see also* Local Rule 105.11 (requiring any motion to seal to include both "proposed reasons supported by specific factual representations to justify the sealing" and "an explanation why alternatives to sealing would not provide sufficient protection"). Finally, if sealing is ordered, such an order must "state the reasons (and specific supporting findings)" for sealing and must explain why sealing is preferable over its alternatives. *Va. Dep't of State Police*, 386 F.3d at 576.

The Settlement Agreement Defendants seek to seal forms the basis for the various counts alleged in this action and thus necessarily plays an important role in adjudicating the substantive rights of the parties to this dispute. Accordingly, it is a judicial record to which the common law right of public

26

access attaches.   To justify sealing, Defendants must establish that a significant countervailing interest exists that outweighs the public's interest in accessing this document.

Defendants first argue that the document should be sealed because it contains a confidentiality provision.   It appears, however, that this action may fall within an exception to the confidentiality provision which provides that "any Party may disclose the terms of this Agreement pursuant to . . . court process[.]"   (ECF No. 7, at 13).   Even if this exception does not apply, the confidentiality provision would not overcome the common law presumption of public access.   Furthermore, the fact that the parties previously stipulated that the Settlement Agreement should remain confidential does not provide an adequate justification for sealing the document.   *See Visual Mining, Inc. v. Ziegler,* No PWG 12-3227, 2014 WL 690905, at *5 (D.Md. Feb. 21, 2014) (denying a motion to seal when the only justification was that the documents were "confidential" under a court-approved Protective Order); *Butler v. DirectSAT USA, LLC,* 876 F.Supp.2d 560, 576 n.18 (D.Md. 2012) ("In their motion to seal, Plaintiffs state only that they seek to seal the exhibits pursuant to the confidentiality order, an explanation insufficient to satisfy the 'specific factual representations' that Local Rule 105.11 requires."); *Roberts v. Office of Sheriff for Charles Cnty.,* No. DKC 10-3359, 2014 WL 3778594, at *1

(D.Md. July 29, 2014) (denying motion to seal exhibits in their entirety when the only reasons provided for sealing the documents were that they had been designated "confidential" by the parties and boilerplate arguments devoid of factual support).

Defendants also contend that the Settlement Agreement should be sealed because it contains sensitive commercial information, including pricing information and client lists. These allegations are similar to those made by the defendants in *Sky Angel U.S., LLC v.* Discovery Commc'ns, LLC, No. DKC 13-0031, 2013 WL 3465352, at *9-11 (D.Md. July 9, 2013). In *Sky Angel*, the undersigned found that the defendants' allegations, regarding the confidential commercial nature of the information in the parties' agreement, were inadequate to justify sealing the document:

> [T]hese conclusory assertions do not satisfy Defendants' burden of establishing a significant countervailing interest that outweighs the public right of access to the Agreement — the contract that is at the heart of this lawsuit. [] Defendants' brief [] [does not] provide specific factual details regarding the purported competitive disadvantage that Defendants would face upon unsealing the Agreement, nor is it clear how the contract's terms — with the exception of the pricing information . . . are truly "confidential" or "sensitive."

Similar to the defendants in *Sky Angel,* here Defendants have provided only superficial allegations that the information in

28

the Settlement Agreement is sensitive commercial information. Aside from the pricing information contained in the Settlement Agreement, it is unclear what other information requires confidentiality in order to protect Defendants' business prospects. For instance, Defendants have not provided any specific factual representations, nor is it immediately apparent, why the client list should remain under seal. Moreover, there are multiple provisions of Settlement Agreement that are at issue in the present dispute and Defendants have not provided any justification for why these provisions should remain under seal. Defendants also fail adequately to explain why the confidential information in Settlement Agreement cannot simply be redacted as an alternative to sealing the document in its entirety.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss based on failure to state a claim will be denied. The motion to seal will also be denied, but Defendants have fourteen days to cure the deficiencies. A separate order will follow.

                                          /s/
                        _____
                        DEBORAH K. CHASANOW
                        United States District Judge