IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER A. TERAS, et al.  :

           :

  v.         :  Civil Action No. DKC 14-0244

           :

JINHEE KIM WILDE, et al.

           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract action is a motion to dismiss the counterclaim of Jinhee Kim Wilde and Wilde & Associates, LLC ("W&A") (collectively, the "Counterplaintiffs" or "Defendants"), filed by Christopher A. Teras and Worldwide Personnel, Inc. ("Worldwide") (collectively, the "Counterdefendants" or "Plaintiffs"). (ECF No. 24). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Counterdefendants' motion to dismiss the counterclaim will be denied.

## I. Background

### A. Factual Background[1]

Plaintiff Christopher A. Teras and Defendant Jinhee Kim Wilde are both lawyers who specialize in immigration law. In September 2004, Mr. Teras and Ms. Wilde formed a partnership to practice law, which they organized as Teras & Wilde, PLLC ("T&W"). (ECF No. 19, at 8). T&W worked with U.S. employers and foreign workers, particularly those from Asia, in an effort to secure visas for them to enter the United States and take employment opportunities that U.S. employers could not fill with U.S. workers. In December 2008, Mr. Teras and Ms. Wilde decided to discontinue their partnership, but they did not reach any agreement concerning the termination of T&W. Ms. Wilde withdrew from T&W effective January 31, 2009. At that time, Ms. Wilde demanded that Mr. Teras provide an accounting of firm assets and liabilities, and Mr. Teras allegedly refused. Ms. Wilde filed suit in the Superior Court for the District of Columbia demanding an accounting and other relief. On July 20, 2010, Mr. Teras and Ms. Wilde entered into a settlement agreement (the "Settlement Agreement" or "Agreement") to resolve all issues and

---

[1] The facts recounted here are either set forth in Counterplaintiffs' answer and counterclaim (ECF No. 19) or evidenced by documents referenced or relied upon in the counterclaim. Additional background of this litigation is set forth in a prior decision of the court. (*See* ECF No. 14). Accordingly, this background discussion offers only a brief summary and assumes some familiarity with the facts.

claims between the parties relating to the dissolution of T&W. Other parties to the Settlement Agreement included: T&W; Christopher A. Teras, P.C. ("CATPC"), a professional corporation wholly owned by Mr. Teras; and Worldwide, a corporation organized under the laws of the District of Columbia and wholly owned by Mr. Teras. Mr. Teras and Ms. Wilde executed the Settlement Agreement on behalf of these entities.

After Ms. Wilde brought suit for an accounting, Mr. Teras arranged the filing of Bar complaints against Ms. Wilde in an alleged attempt "to gain an advantage in his settlement negotiations with [Ms.] Wilde, and in his efforts to compete with [her] for future business." Counterplaintiffs allege that, since the parties entered into the Settlement Agreement, Mr. Teras has affirmatively and voluntarily assisted in at least two proceedings against Ms. Wilde and communicated with Bar counsel in both Maryland and the District of Columbia. (*Id.* at 11). According to Counterplaintiffs, Mr. Teras communicated with a key witness against Ms. Wilde, affirmatively and voluntarily assisted that witness in providing testimony, and supported Bar counsel in locating, securing, and preparing that witness testimony. Mr. Teras also allegedly voluntarily disclosed the Settlement Agreement to the D.C. Bar.

Furthermore, the Settlement Agreement governed the payment of liabilities then pending and the disposition of future fees

received from foreign workers whose cases had been initiated by T&W and remained pending. Under the terms of their contracts with T&W, foreign workers made incremental payments to T&W at various stages and "a larger, balloon payment upon issuance of a visa to the foreign worker." (*Id.* at 9). Counterplaintiffs allege that, during the course of the parties' partnership and continuing through the negotiation of the Settlement Agreement, Mr. Teras represented that the foreign recruiters with whom Mr. Teras and Ms. Wilde worked on behalf of foreign recruits were aware of and had entered into agreements with Worldwide. Mr. Teras also allegedly represented that the U.S. employers to whom the foreign recruits had applied had relationships with Worldwide. But, according to Counterplaintiffs, Worldwide had no such agreements. (*Id.* at 9-10). "Instead, Worldwide existed only as a device for [Mr.] Teras to funnel to himself a greater share of the fees paid by foreign recruiters." (*Id.* at 10). Ms. Wilde relied on Mr. Teras' representations to her detriment, as she consented to hundreds of thousands of dollars in additional payments to Mr. Teras "under the auspices of Worldwide." Ms. Wilde also agreed to give Worldwide a role in future proceedings and a portion of future fees received from foreign recruiters. The Settlement Agreement allocated a portion of these future fee payments to Worldwide. (*Id.* at 9).

**B.  Procedural Background**

On  January  27,  2014,  Plaintiffs  Mr.  Teras,  CATPC,  and Worldwide  filed  a  complaint  against  Defendants  Ms.  Wilde  and  W&A alleging  that  Defendants  failed  to  comply  with  the  Settlement Agreement  since  its  inception.   On  March  5,  2014,  Defendants filed  a  motion  to  dismiss  (ECF  No.  6)  and  a  motion  to  seal  (ECF No.  8).   On  February  26,  2015,  the  court  issued  a  memorandum opinion  and  order  denying  Defendants'  motion  to  dismiss  and motion  to  seal.  (ECF  Nos.  14;  15).

Defendants  as  Counterplaintiffs  filed  an  answer  and counterclaim  on  March  12,  2015.   (ECF  No.  19).   Plaintiffs  as Counterdefendants  filed  a  motion  to  dismiss  Counts  I  and  II  of the  counterclaim.  (ECF  No.  24).   Counterplaintiffs  responded  in opposition  and  requested  a  hearing  on  the  motion  (ECF  No.  29), and  Counterdefendants  replied  (ECF  No.  30).

**II.  Standard of Review**

The  purpose  of  a  motion  to  dismiss  under  Rule  12(b)(6)  is to  test  the  sufficiency  of  the  complaint,  or  counterclaim. *Presley v. City of Charlottesville,*  464  F.3d  480,  483  (4th  Cir. 2006).   A  complaint  need  only  satisfy  the  standard  of  Rule  8(a), which  requires  a  "short  and  plain  statement  of  the  claim  showing that  the  pleader  is  entitled  to  relief."   Fed.R.Civ.P.  8(a)(2). "Rule  8(a)(2)  still  requires  a  'showing,'  rather  than  a  blanket assertion,  of  entitlement  to  relief."   *Bell  Atl.  Corp.  v.*

*Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Allegations of fraud, which Counterplaintiffs assert in Count I of their counterclaim, are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783. Rule 9(b) states that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such circumstances typically "include the 'time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Id.* at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)). Rule 9(b) provides the defendant with sufficient notice of the basis for the plaintiff's claim, protects the defendant against frivolous suits, eliminates fraud actions where all of

the facts are learned only after discovery, and safeguards the defendant's reputation. *Id.* at 784 (citation omitted). In keeping with these objectives, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant[s were] made aware of the particular circumstances for which [they] will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id.* Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6). *See Harrison*, 176 F.3d at 783 n.5.

## III. Analysis

### A.    Fraud (Count I)[2]

In Count I of the counterclaim, Counterplaintiffs allege that Mr. Teras made false representations about Worldwide's relationships with foreign recruiters and U.S. employers. According to Counterplaintiffs, Worldwide had no such relationships. (ECF No. 19, at 9-10). Counterplaintiffs allege that Ms. Wilde relied on Mr. Teras' representations to her detriment, as she consented to hundreds of thousands of dollars in additional payments to Mr. Teras and agreed to give Worldwide a role in future proceedings and a portion of future fees received from foreign recruiters. Counterplaintiffs seek

---

[2] The parties agree that District of Columbia law, which the parties chose in the Settlement Agreement, applies to Count I. (ECF No. 28-1 § 14(g)).

declaratory judgment establishing that the Settlement Agreement is unenforceable and that Worldwide is not entitled to any future payments. Counterdefendants challenge whether Counterplaintiffs state an actionable fraud claim on which relief may be granted, arguing that the Settlement Agreement resolved all of the claims between Mr. Teras, Ms. Wilde, and affiliate entities arising from the dissolution of T&W. (ECF No. 24-1, at 1).[3] In addition, Counterdefendants argue that Counterplaintiffs' fraud claim is barred by the statute of limitations, and that Ms. Wilde did not reasonably rely on Mr. Teras' representations. (*Id.* at 5-8).

Counterdefendants first assert that Counterplaintiffs fail to state an actionable fraud claim because such claims were released in the Settlement Agreement. The release provision in § 3 of the Settlement Agreement provides:

> Except with respect to the Parties' respective covenants, obligations and agreements under this Agreement, Wilde, on Wilde's own behalf and on behalf of each of Wilde's Affiliates, hereby absolutely, unconditionally and forever *releases and discharges the other Parties to this Agreement and the Affiliates of the other Parties to this Agreement, from any and all claims of any nature whatsoever*, in law or

---

[3] Counterdefendants' motion does not distinguish between arguments made on behalf of Mr. Teras or Worldwide. Neither does Counterdefendants' motion distinguish between Ms. Wilde and W&A. Accordingly, this memorandum opinion will refer to Counterdefendants and Counterplaintiffs collectively, unless otherwise noted.

> in equity, whether known or unknown, whether
> or not damages have accrued or are now known
> or ascertainable, in any way *resulting from,*
> *arising out of, taking place, or relating to*
> [*any act or omission occurring prior to July*
> *20, 2010*].

(ECF No. 28-1 § 3(d)) (emphases added).[4]  Counterdefendants

contend that because Counterplaintiffs' fraud claim is based on

Mr. Teras' purported misrepresentations prior to the effective

date of the Settlement Agreement, the claim included in Count I

was released and cannot now be asserted.  (ECF No. 24-1, at 4).

Counterplaintiffs     concede     that     Mr.     Teras'     alleged

misrepresentations occurred within the timeframe covered by the

Settlement Agreement (ECF No. 19, at 9), but assert that Mr.

Teras' alleged misrepresentations fraudulently induced Ms. Wilde

to enter into the Settlement Agreement (ECF No. 29, at 3).

---

[4] Defendants' counterclaim incorporates by reference the
Settlement Agreement.  (*See* ECF No. 19).  Accordingly, the
Settlement Agreement, which is attached as an exhibit to
Plaintiffs' motion to dismiss, may be considered in adjudicating
Plaintiffs' motion.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572
F.3d 176, 180 (4th Cir. 2009) (permitting courts to consider
documents attached to the motion to dismiss that are integral to
the counterclaim and authentic); *Clark v. BASF Corp.*, 142
F.App'x 659, 661 (4th Cir. 2005) (citing 5A Charles Alan Wright &
Arthur R. Miller, Fed. Prac. & Proc. § 1327 (3d ed. 2004)
("[W]hen the plaintiff fails to introduce a pertinent document
as part of her pleading, a significant number of cases from
throughout the federal court system make it clear that the
defendant may introduce the document as an exhibit to a motion
attacking the sufficiency of the pleading; that certainly will
be true if the plaintiff has referred to the item in the
complaint and it is central to the affirmative case.")).

Under Rule 9(b), a plaintiff's allegations sounding in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). Fraud claims that do not comply with Rule 9(b) warrant dismissal under Rule 12(b)(6). *See Harrison*, 176 F.3d at 783 n.5. Here, Counterplaintiffs' allegations are not too vague, and the counterclaim contains specific facts regarding Mr. Teras' purported fraud that led Ms. Wilde to enter into the Settlement Agreement. According to Counterplaintiffs, Mr. Teras made false representations during the course of the parties' partnership and negotiation of the Settlement Agreement. (ECF No. 19, at 9). Counterplaintiffs allege that "Worldwide existed only as a device for [Mr.] Teras to funnel to himself a greater share of the fees paid by foreign recruiters" and that Ms. Wilde reasonably relied on Mr. Teras' representations to her detriment. (*Id.* at 10). The counterclaim describes Mr. Teras' alleged fraudulent misrepresentations and fraudulent inducement, identifies the participants in relevant conversations and negotiations, and alleges that Ms. Wilde agreed to the terms of the Settlement Agreement as a result of her reasonable reliance on Mr. Teras'

11

misrepresentations. (*Id.* at 9-10). These allegations are sufficient, and the release provision is no bar to Count I.

Counterdefendants next argue that Count I is barred by a three-year statute of limitations. (ECF No. 24-1, at 5 (citing D.C. Code § 12-301(8))). "The statute of limitations is an affirmative defense that should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time barred." *Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 456 (D.Md. 2014) (citations omitted); 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (3d ed.) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)."). Counterdefendants contend that dismissal is proper "[b]ecause the facts necessary for the [c]ourt's determination of whether the statute of limitations on [Ms.] Wilde's fraud claim has run are apparent from the face of [the counterclaim]." (ECF No. 24-1, at 5). In response, Counterplaintiffs argue that the face of the counterclaim does not reveal when the fraud claim accrued. (ECF No. 29, at 4). What constitutes the accrual of a cause of action is a question of law. *See, e.g., Bussineau v. President of Georgetown College*, 518 A.2d 423, 425 (D.C. 1986). When

accrual actually occurred in a particular case is a question of fact. *See, e.g., Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1204 (D.C. 1984). "When one person defrauds another, there will be a delay between the time the fraud is perpetrated and the time the victim awakens to the fact." *Kropinski v. World Plan Executive Council-US*, 853 F.2d 948, 955 (D.C. Cir. 1988). Due to this inherent delay, "a cause of action [for fraud] accrues for purposes of the statute of limitations when the plaintiff has either actual notice of her cause of action or is deemed to be on inquiry notice because . . . an investigation, if conducted, would have led to actual notice." *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). "[T]he inquiry is highly fact-bound and requires an evaluation of all of the plaintiff's circumstances." *Id.* Here, it is not apparent from the face of the counterclaim when the alleged fraud was discovered by Counterplaintiffs, or reasonably should have been. *See Kropinski*, 853 F.2d at 955; *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F.Supp.2d 16, 42 (D.D.C. 2006). The allegations in the counterclaim reveal when Mr. Teras allegedly made false representations to Ms. Wilde, but Counterplaintiffs do not assert when Ms. Wilde discovered or reasonably should have discovered the fraud.

Counterdefendants also argue that Count I fails because Ms. Wilde's alleged reliance on Mr. Teras' misrepresentations was

unreasonable. Asserting that the integration clause of the Settlement Agreement renders immaterial representations not found in the Settlement Agreement, Counterdefendants contend that the statements on which Ms. Wilde relied were immaterial and her reliance thus was unreasonable. (ECF No. 24-1, at 7). The underlying fraud claim at issue requires that Ms. Wilde acted in reasonable reliance on the alleged misrepresentation. *See, e.g., Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002). Counterplaintiffs challenge whether the Settlement Agreement's integration clause renders Ms. Wilde's reliance unreasonable and bars her fraud claim. According to Counterplaintiffs, Mr. Teras' "fraudulent statements were as to existing facts that formed the basis for the parties' agreement, and which were perpetuated in that agreement. . . . That is precisely the type of fraud that is not barred by an integration clause, and on which a fraud claim can proceed." (ECF No. 29, at 10). Counterdefendants misread case law to stand for the proposition that one may not reasonably rely on prior representations where the Settlement Agreement contains an integration clause. *See Washington Inv. Partners of Delaware, LLC v. Sec. House, K.S.C.C.*, 28 A.3d 566, 576 (D.C. 2011); *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 931-32 (D.C. 1992); *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988). The factual scenarios in the case law

14

cited by Counterdefendants are inapposite. Counterplaintiffs seek relief not for prior oral agreements that contradict statements contained in the Settlement Agreement, but because Mr. Teras allegedly presented Ms. Wilde with misleading information to induce her to enter into the Settlement Agreement. The present case is distinguishable from those on which Counterdefendants rely where prior oral representations that provided the basis of the plaintiff's claim were terms or promises not included in the contract. Here, Counterplaintiffs assert that the information furnished to Ms. Wilde in attempt to form the Settlement Agreement was fraudulent and misleading, and it is a question of fact whether Ms. Wilde reasonably relied on such statements in determining whether to enter into the contract.

Contrary to Counterdefendants' assertions (ECF No. 30, at 8), District of Columbia case law recognizes this distinction:

> Although the court did not engage in any significant discussion of the differences between the fraud claims in *One-O-One* and those at hand in *Whelan*[ *v. Abell*, 48 F.3d 1247 (D.C. Cir. 1995)], and although the discussion of fraud in the inducement in *One-O-One* is technically dictum, we agree with the court's general statement in *Whelan* that an integration clause does not provide a blanket exemption to claims of fraud in the inducement. We are satisfied, however, that the *Whelan* court was correct in distinguishing allegedly fraudulent representations with regard to promises of future behavior. *See Hercules*, 613 A.2d

918-19 (involving allegations that [the
defendant's] misrepresentation that it would
deposit money into an account to satisfy
obligations under the contract induced [the
plaintiff] to agree to include an
arbitration clause in the contract); *One-O-
One*, 848 F.2d at 1285 (involving allegations
that [the defendants'] promise that they did
not intend to sell or dispose of their
interest in [the business], although not
included in the final, fully integrated
agreement, fraudulently induced [the
plaintiff] to enter into the contract).

When a written contract contains an
incorporation clause, any alleged prior
representations that a party will or will
not do something in the future that are not
included in that written contract generally
do not support a fraud-in-the-inducement
claim. On the other hand, prior
representations that conceal fraudulent
conduct, thereby precluding a party from
filing suit within the statute of
limitations period, may provide support for
such a claim. Here, we respect that
distinction and note that [the plaintiff's]
allegations involved representations that
may have shielded fraudulent conduct and
information which allegedly would have
enabled her to file her suit before the
statute expired.

*Drake v. McNair*, 993 A.2d 607, 624 (D.C. 2010).

Counterplaintiffs adequately allege that "[Ms.] Wilde reasonably

relied on [Mr. Teras'] representations, and did so to her

detriment. . . . [She] would not have agreed to . . .

additional payments [to Worldwide] had she known [his]

representations about Worldwide were false." (ECF No. 19, at

10). Because "an integration clause does not provide a blanket

exemption" to fraud claims, *Drake*, 993 A.2d at 624,

Counterdefendants' motion to dismiss Count I of the counterclaim will be denied. *See Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F.Supp.2d 101, 114 (D.D.C. 2013).

**B. Breach of Contract (Count II)**

Counterplaintiffs argue that Mr. Teras twice breached the Settlement Agreement. First, Counterplaintiffs assert that Mr. Teras breached by cooperating with Maryland and District of Columbia Bar counsel in disciplinary proceedings against Ms. Wilde.[5] Second, Counterplaintiffs allege that Mr. Teras disclosed the Settlement Agreement to D.C. Bar counsel, in violation of the contract's confidentiality provision. In response, Counterdefendants contend that Counterplaintiffs have failed to state a plausible claim for breach of contract because the Settlement Agreement permitted Mr. Teras to act as he did.

**1. Cooperating with Maryland and D.C. Bar Counsel**

Counterdefendants argue that Counterplaintiffs' first breach-of-contract "claim must be dismissed because the Settlement Agreement expressly permits Mr. Teras to take 'any

---

[5] Counterdefendants note that Ms. Wilde's disciplinary proceedings in the District of Columbia arose from her criminal conviction in the Incheon District Court in Incheon, South Korea, "based on that court's finding that respondent had stolen $1,100 in U.S. currency from another passenger while on a flight from Washington to Incheon, South Korea." *In re Wilde*, 68 A.3d 749, 751 (D.C. 2013); (ECF No. 24-1, at 8 n.4). Counterplaintiffs assert that a Maryland complaint against Ms. Wilde was resolved with a finding that she did not violate any ethics rules. (ECF No. 19, at 11).

17

actions required by law' and comply 'with the rules of professional conduct applicable to lawyers in any jurisdiction in which' [Mr.] Teras is licensed to practice." (ECF No. 24-1, at 8 (quoting ECF No. 28-1 § 12(h))).[6] Counterdefendants refer to the relevant subsection in full:

> Each Party agrees that it *will not affirmatively voluntarily encourage, cooperate with, or assist in any way in the prosecution of any case* (civil or criminal) or proceeding against any other Party, *including without limitation any pending Bar complaints*, the pending case in Korea against Wilde, and any potential cases by Erica Chang or TD Bank. Nothing herein shall restrict a Party from i) pursuing any claim, cause of action or the enforcement of any right, remedy or agreement arising under this Agreement, or ii) *taking any actions required by law*, such as responding to any court or administrative subpoenas or other process, or iii) *responding to lawful requests from any governmental official including, without limitation, Bar counsel or its agents or representatives*, . . . or v) *complying with the rules of professional conduct applicable to lawyers in any jurisdiction where such Party is licensed to practice.*

(ECF No. 28-1 § 12(h) (emphases added)). According to Counterdefendants, the Settlement Agreement's express carve-outs render Counterplaintiffs' breach-of-contract claim implausible. (ECF No. 24-1, at 9-10). Counterdefendants cite pertinent rules

---

[6] Counterdefendants erroneously refer to § 13(h) in their memorandum in support of their motion to dismiss. (*See* ECF No. 24-1, at 9-10). The provision is styled as § 12(h) in the Settlement Agreement. (*See* ECF No. 28-1 § 12(h)).

of professional conduct from Maryland and the District of Columbia to show that Mr. Teras "had a duty, not an option, to report [Ms.] Wilde's misconduct to Bar Counsel." (*Id.* at 10). Counterdefendants thus assert that Mr. Teras' conduct "is not prohibited by the Settlement Agreement because it constitutes 'actions required by law,' 'responding to lawful requests from . . . Bar Counsel,' and/or 'complying with the rules of professional conduct.' The Settlement Agreement creates an explicit safe harbor for these types of actions." (*Id.* (quoting ECF No. 28-1 § 12(h))). In response, Counterplaintiffs argue that "there is a difference between responding to a lawful request from Bar Counsel for information . . . and voluntarily searching for and providing information to Bar Counsel." (ECF No. 29, at 11). According to Counterplaintiffs, Mr. Teras' duty is irrelevant at the motion-to-dismiss stage, as the counterclaim "alleges that he 'affirmatively and voluntarily assisted in at least two proceedings'" against Ms. Wilde and "assisted Bar Counsel in 'locating, securing, and preparing'" witness testimony. (*Id.* (quoting ECF No. 19, at 11)).

Counterplaintiffs plausibly allege that the Settlement Agreement created a number of obligations for Mr. Teras, and that he breached them. Here, the Settlement Agreement prohibits the parties from "affirmatively voluntarily encourag[ing], cooperat[ing] with, or assist[ing] in any way in the prosecution

19

of any case (civil or criminal) or proceeding against any other Party," subject to some enumerated exceptions. (ECF No. 28-1 § 12(h); *see* ECF No. 19, at 11). Although Counterplaintiffs do not allege explicitly that Mr. Teras' assistance was not undertaken pursuant to the rules of professional conduct or other lawful demands, the allegations describing Mr. Teras' assistance as affirmative and voluntary are sufficient to satisfy the pleading standard and assert a claim for breach of contract.

### 2. Disclosing the Existence of the Settlement Agreement

Counterplaintiffs also allege that Mr. Teras "voluntarily disclosed the Settlement Agreement to the D.C. Bar." (ECF No. 19, at 11). According to Counterdefendants, the counterclaim does "*not* allege that [Mr.] Teras provided a copy of the Settlement Agreement to Bar Counsel or that he disclosed any or all of the content of the Settlement Agreement's terms or conditions." (ECF No. 24-1, at 11 (emphasis in original)). Counterdefendants argue that the counterclaim "fails to state a claim for breach of the Settlement Agreement's confidentiality provision because [Counterplaintiffs'] allegation that [Mr.] Teras disclosed the Settlement Agreement's existence to Bar Counsel only avers conduct expressly *permitted* by the confidentiality provision." (*Id.* at 11-12 (emphasis in original)). Counterdefendants thus contend that "[Mr.] Teras

did not breach the Settlement Agreement by communicating that the parties had entered into an agreement to end their litigation." (*Id.* at 12). In response, Counterplaintiffs assert that Counterdefendants rewrite the counterclaim and argue that the counterclaim does "allege[] that [Mr. Teras] disclosed the Settlement Agreement itself." (ECF No. 29, at 12).

Construing the factual allegations of the counterclaim in the light most favorable to Counterplaintiffs, Counterdefendants cannot succeed on their motion to dismiss. The confidentiality provision of the Settlement Agreement provides:

> Except as expressly set forth in this Agreement, such Party shall keep this Agreement confidential and *shall not disclose the terms of this Agreement* to any individual, association, corporation, government agency or other entity without specific grant of permission in writing by the other Parties, provided that any Party may disclose the terms of this Agreement pursuant to applicable law, statute, regulation, administrative process or court process; and further provide that the *Parties may state that they have resolved their dispute.*

(ECF No. 28-1 § 14(a) (emphases added)). Counterplaintiffs allege that Mr. Teras breached the confidentiality provision of the Settlement Agreement by "voluntarily disclos[ing] the Settlement Agreement to the D.C. Bar." (ECF No 19, at 11). The Settlement Agreement prohibits the parties from disclosing the terms of the agreement, which would certainly encompass

disclosing the actual contract in its entirety. Here, Counterplaintiffs' allegation that Mr. Teras disclosed the Settlement Agreement itself goes beyond what Counterdefendants suggest, which is that Mr. Teras disclosed only the existence of the Settlement Agreement. (ECF No 24-1, at 12). Counterdefendants also argue that the confidentiality provision contains a carve-out permitting the parties to disclose terms "pursuant to applicable law . . . [or] administrative process or court process." (ECF No. 28-1 § 14(a)). However, Counterplaintiffs do not allege that Mr. Teras disclosed the Settlement Agreement pursuant to such a proceeding. Accordingly, because Counterplaintiffs sufficiently allege a contractual obligation and breach, Counterdefendants' motion to dismiss the breach-of-contract counterclaim will be denied.

## IV. Conclusion

For the foregoing reasons, Counterdefendants' motion to dismiss will be denied. A separate order will follow.


_____
              /s/
DEBORAH K. CHASANOW
United States District Judge